In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2434

ARCHIE ROBINSON,

*Plaintiff-Appellee*,

*v.*

CITY OF HARVEY, ILLINOIS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3696—**Joan Humphrey Lefkow**, *Judge*.

ARGUED MAY 21, 2010—DECIDED AUGUST 6, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. A jury found in 2002 that Manuel Escalante, a police officer in Harvey, Illinois, had shot Archie Robinson without a good reason and then tried to frame him for possessing a gun. The jury awarded $25,000 in compensatory damages, for which Escalante and the City are jointly and severally liable, and $250,000 in punitive damages, for which Escalante

alone is liable. (Municipalities are not subject to punitive damages in suits under 42 U.S.C. §1983. See *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).) In October 2004 the district court ordered Escalante and the City to pay approximately $507,000 as attorneys' fees under 42 U.S.C. §1988.

After a contentious post-verdict motions practice, Robinson and Escalante reached a settlement. The City's attempt to obtain appellate review of the jury's award foundered on its failure to appeal until after the district court had awarded attorneys' fees. 489 F.3d 864 (7th Cir. 2007). The appeal was timely with respect to the award of fees, which was affirmed.

The City paid the $25,000 in damages plus the $507,000 in fees and there, one would have supposed, the litigation ended. Not so. In April 2008, some 10 months after we resolved the appeal, Robinson filed a supplemental request for attorneys' fees, seeking compensation (from the City only) for legal work that had been performed between November 1, 2002, and April 1, 2008. The work fell into four categories: (1) Time devoted to fending off Escalante's post-verdict motions for relief from judgment; (2) time devoted to defeating Escalante's attempts to stay enforcement of the judgment; (3) time devoted to prosecuting the earlier motion (filed in August 2003) for attorneys' fees for work done through October 31, 2002; and (4) time devoted to the appellate proceedings (and the supplemental fee petition itself). The City conceded that Robinson is entitled to compensation for the time needed to defend against its appeal but con-

tended, and the district judge agreed, that Robinson cannot recover attorneys' fees for his unnecessary and unsuccessful cross-appeal. 2008 U.S. Dist. LEXIS 79662 *16–18 (N.D. Ill. Oct. 7, 2008). The court rejected the City's argument that a supplemental award is barred by principles of issue or claim preclusion and awarded Robinson an additional $277,462.

The district court's rejection of the City's preclusion defense is sound; issue and claim preclusion concern the effect of one suit on a later suit and have nothing to do with how issues are resolved within a single case. See *Arkla Energy Resources v. Roye Realty & Developing, Inc.*, 9 F.3d 855, 866 (10th Cir. 1993) (applying this principle to supplemental awards of attorneys' fees); *Wolfe v. New Mexico Department of Human Services*, 28 F.3d 1056, 1059 (10th Cir. 1994) (same). Supplemental awards of legal fees are common. Since a prevailing party is entitled to collect the legal expenses incurred in obtaining an award of fees for success on the merits, see *Kurowski v. Krajewski*, 848 F.2d 767, 777 (7th Cir. 1988), and defending that award on appeal, see *Commissioner of INS v. Jean*, 496 U.S. 154 (1990), supplemental awards are inevitable. But timing is a more serious problem—as is the fact that the district judge ordered the City to pay attorneys' fees for proceedings that concerned the award of punitive damages against Escalante.

The first two items on Robinson's supplemental bill concern legal work that affected Robinson's rights vis-à-vis Escalante. There is no reason why the City should have to pay for that work. The district judge observed

that, when multiple defendants are jointly and severally liable for an award of damages, they are also jointly and severally liable for attorneys' fees under §1988. That's true enough but not controlling, since the City is *not* jointly liable with Escalante for punitive damages. Because the City was going to pay the $25,000 compensatory award (if it survived the appeal), indeed is required by Illinois law to do so, 745 ILCS 10/9-102, independent of the fact that Robinson was bound to turn to the deeper pocket, Escalante's post-judgment motions concerned the punitive award, for which the City did not bear any responsibility. Any fees for dealing with those post-judgment motions therefore are on Escalante's tab, not the City's, and as Escalante has settled with Robinson it is doubly inappropriate to shift these expenses to the City.

The district court did not suggest that any of the legal work performed in categories 1 and 2 concerned the City's liability for compensatory damages, as opposed to Escalante's liability for punitive damages. And we need not remand for consideration of the possibility that the legal time was devoted in part to the City's liability and in part to Escalante's, because there is a second reason why Robinson is not entitled to a supplemental award of fees for this legal work. Recall the dates: Jury verdict in July 2002; motion for attorneys' fees filed in August 2003, covering work done before November 1, 2002; award of fees in October 2004; appeal decided in June 2007; additional motion for fees filed in April 2008, covering work done during November 2002 through April 1, 2008. This implies that, as Robinson sees

things, the fees awarded in October 2004 were just part of his entitlement; other post-verdict, but pre-award (indeed, pre-application) legal work remained to be compensated. Yet the premise of the City's appeal (and of our decision) was that the $507,000 awarded in October 2004 was the *full* award of attorneys' fees.

Robinson told this court, in his docketing statement and brief, that the award represented a final decision on the fees question. If he had said that the district court's order of October 2004 was just a waystation on the path to a calculation of what the City really owed, this court would have dismissed the appeal and ordered the parties to wait until the district judge was done toting up fees. Only after the full award has been made can a court of appeals sensibly apply the lodestar method prescribed by *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010). (We thought in 2007 that an award of $500,000 was not disproportionate to the relief; the disposition might have been otherwise had the panel known that the full award was closer to $800,000.)

Awards of attorneys' fees are appealable separately from the merits, see *White v. New Hampshire Department of Employment Security*, 455 U.S. 445 (1982), but apart from situations within the scope of the collateral-order doctrine, such an award, like a decision on the merits, may be appealed only when it represents a final decision. An award for part of the legal work in the district court is no more "final" than would be an award of damages for income lost in one year, while the district court had under advisement a motion to calculate the loss for

a second year. Cf. *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737 (1976). The only reason we entertained the first appeal in this case is that Robinson himself assured the court that the award of fees was final. Our decision necessarily held that it is indeed final. That is the law of the case, which prevents Robinson from attempting to benefit from an inconsistent position later on. (Principles of judicial estoppel would have the same effect. See *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).)

Legal work performed in seeking the award of fees, and defending them on appeal, constitutes a separate post-decision category that is not barred by our conclusion that the 2004 award was "final." The problem with respect to this legal work is time. Robinson's lawyers knew by October 2004 how many hours they had devoted to obtaining the award in the district court. They knew by June 2007 (and likely December 2006, when the appeal was argued) how many hours they had devoted to defending that award in this court. Yet Robinson did not seek compensation for this legal work until April 2008. According to Fed. R. Civ. P. 54(d)(2)(B)(i), a litigant has 14 days from entry of judgment to seek an award of fees, unless a statute or court order provides otherwise. No statute provides otherwise for fees under §1988. Local Rule 54.3(b) of the Northern District of Illinois does provide otherwise: it extends the time to 90 days. But Robinson took more than 1,250 days (measured from the award of fees in October 2004) or 275 days (measured from the appellate decision in June 2007).

Robinson tries to excuse his delay by pointing to Local Rule 54.3(d), which requires the parties to meet and

attempt to resolve differences about attorneys' fees before presenting a motion to the court. Yet this obligation is why Rule 54.3(b) extends the time from 14 days to 90, not a reason to take *more* than 90 days. Robinson does not contend that his lawyers attempted to fulfil the meet-and-negotiate requirement within the 90 days but that the City dragged the process out for years. Nor does Robinson contend that, as part of negotiations, the City promised not to invoke the time limit of Rule 54.3(b). Robinson did not ask the district judge for an extension, and when granting Robinson's belated motion for a supplemental award the district judge did not mention the fact that the motion had been filed long after the periods set by Rule 54(d)(2)(B)(i) and Local Rule 54.3(b). Instead Robinson effectively contends that there are no time limits for motions seeking attorneys' fees. He cites *Gautreaux v. Chicago*, 690 F.2d 601 (7th Cir. 1982), which applied the doctrine of laches to these motions. But Rule 54(d)(2)(B)(i) and Local Rule 54.3 were adopted after *Gautreaux* and supersede its approach. We are not disposed to undermine time limits in the national and local rules. These limits prevent what has occurred here: The revival of a case that the defendant supposed had long been closed.

Instead of either following the local rule or asking for an extension, Robinson waited until the time had expired and then asked the district judge to "set a schedule" for filing—as if there were no applicable rule. The judge gave him another seven months, until April 2008, but did not explain why, let alone find that there was good cause for either the initial delay in applying or

the length of the extension. Nor did the district judge invite a response from the City before setting this schedule, making it hard to see how the City can be said to have forfeited its opportunity to protest: it was not afforded an opportunity. Judges need good reasons for permitting litigants to exceed deadlines. See *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). The only reason Robinson has ever given—the need to consult with the City before filing—is unavailing, as we have already explained.

Litigation must have its end. The supplemental award of attorneys' fees is

REVERSED.